OPINION
Defendant-appellant Danny Beddow appeals from his conviction and sentence, following a no-contest plea, for Burglary. Beddow contends that the trial court erred by accepting an oral plea tendered by his counsel, rather than by himself, personally, that the trial court erred by imposing the maximum sentence without setting forth its reasons for doing so, and that the trial court erred by finding him guilty of Burglary, when a police report reflects that the structure in which he allegedly trespassed was not an occupied structure.
We conclude that the trial court did not err in accepting the plea, that the trial court satisfactorily explained its reasons for finding Beddow to be an offender who poses the greatest likelihood of committing future crimes, which is a sufficient finding for the imposition of a maximum sentence, that Beddow's no-contest plea admitted all of the facts alleged in the indictment, which included the fact that the structure in which he allegedly trespassed was an occupied structure, and that there was nothing in the police report that was submitted to the court that absolutely negated this fact. Accordingly, the judgment of the trial court is Affirmed.
 I
Beddow was arrested and charged with two counts of Burglary, one count of Receiving Stolen Property, one count of Possession of Criminal Tools, and one count of Breaking and Entering. He entered into a plea agreement with the State, wherein Beddow, in open court, pled no contest to one count of Burglary, and the other charges against him were dismissed. The trial court found Beddow guilty of Burglary, and imposed the maximum sentence of five years incarceration. From his conviction and sentence, Beddow appeals. II Beddow's Second Assignment of Error is as follows: THE TRIAL COURT ERRED IN THAT IT FOUND DEFENDANT GUILTY, WHEN THE DEFENDANT NEVER ENTERED A GUILTY OR NO CONTEST PLEA.
The record reflects that the colloquy required by Crim.R. 11, wherein the trial court ascertains that the defendant understands the consequences of a no-contest plea, took place between the trial court and the defendant, personally, with the exception that when the plea was orally tendered, the tender was by Beddow's trial counsel. The record also reflects that Beddow personally signed an entry of waiver and plea, in open court, after acknowledging to the trial court that he understood that document. Furthermore, from the oral colloquy between the trial court and Beddow concerning the consequences of his plea, it was clear that Beddow was in court for the purpose of tendering a no-contest plea to one count of Burglary, as part of a plea agreement with the State.
Under all of these circumstances, we conclude that this case is within the scope of our holding in State v. Keaton (January 14, 2000), Clark App. No. 98-CA-99, unreported, in which we held that a plea of guilty when entered by counsel has the same force and effect as a plea personally entered by the accused when the latter is present in court and the circumstances clearly demonstrate that the accused understands what is being done and acquiesces therein.
Beddow's Second Assignment of Error is overruled.
 III
Beddow's Third Assignment of Error is as follows:
 THE CONVICTION SHOULD BE REVERSED BECAUSE THE CONVICTION WAS CLEARLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In this assignment of error, Beddow appears to be claiming that the trial court erred in accepting his no-contest plea to Burglary of an occupied structure, because a police report that was submitted to the court reflected that the structure involved in this offense was not occupied.
In general, a plea of no contest admits the truth of the facts alleged in the indictment. Crim.R. 11(B)(2). The indictment in this case alleged that Beddow "did by force, stealth or deception, trespass in an occupied structure, to-wit: residence, located at 523 Adams St., or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure, any criminal offense. . . ."
Even though an essential element of an offense is alleged in the indictment to which the defendant pleads no contest, it may, nevertheless, constitute an abuse of discretion for the trial court to accept a plea of no contest to that offense when a recitation by the prosecutor, at the plea hearing, of the facts of the offense "absolutely negates an essential element of the offense." State v. Lowe (March 24, 1995), Miami County App. Nos. 93-CA-54, 93-CA-55, unreported, at p. 5; State v. Wooldridge (October 6, 2000), Mont. App. No. 18086, unreported, at p. 2. See, also, State v. Cohen (1978), 60 Ohio App.2d 182.
In the case before us, the trial court did elicit from the prosecutor, at the plea hearing, a recitation of the facts constituting the offense to which Beddow was pleading no contest. In this recitation, the prosecutor recited the elements of the offense, as set forth in the indictment, including, specifically, the fact that the structure in which the trespass allegedly took place was an occupied structure. The prosecutor amplified these facts only by indicating that Beddow's fingerprint had been identified inside the structure.
In his brief, Beddow refers to a Detective Incident Report, of which he contends the trial court should have taken judicial notice. He contends that that report reflects that the structure that is the subject of this charge was not occupied. The State contends, to the contrary, that the incident report reflects that the structure was a furnished house, that the utilities were not disconnected, that food was present in the house, and that the owner, who was then living in a different location, came by the house from time to time to check on it.
As the State notes, a structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure "maintained" as a dwelling within the meaning of the definition of an "occupied structure" in Title 29 of the Ohio Revised Code. In this context, then, an occupied structure includes a dwelling whose usual occupant is absent on a prolonged vacation, a dwelling whose usual occupant is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant. In all these examples, even though the dwelling is not being presently occupied as a place of habitation, that situation is temporary, and persons are likely to be present from time to time to look after the property — to help "maintain" its character as a dwelling. State v. Green (1984), 18 Ohio App.3d 69, at 72.
We note, further, that R.C. 2909.01(C)(1) defines an "occupied structure" as:
 [A]ny house, building, or out building, water craft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies: . . .
 It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
Based on the statutory definition of an "occupied structure," in the holding in State v. Green, supra, together with our review of the police incident report to which Beddow and the State refer, we conclude that even if the trial court was required to take that report into consideration in exercising its discretion whether to accept Beddow's no-contest plea, that report does not absolutely negate the allegation in the indictment that the structure in which Beddow allegedly trespassed was an occupied structure.
Accordingly, Beddow's Third Assignment of Error is overruled.
 IV
Beddow's First Assignment of Error is as follows:
 THE TRIAL COURT ERRORS [SIC] IN THAT IT SENTENCED DEFENDANT TO THE MAXIMUM IMPRISONMENT WITHOUT SETTING FORTH ITS RATIONALE PURSUANT TO STATUTE.
The trial court imposed the maximum sentence upon Beddow, being a sentence of five years imprisonment. A maximum sentence may be imposed "only upon offenders who committed the worst forms of the offense, upon offenders who posed the greatest likelihood of committing future crimes, upon certain major drug offenders . . . and upon certain repeat violent offenders[.]" R.C. 2929.14(C). Furthermore, when imposing a maximum prison term for one offense, the trial court must "make a finding that gives it reasons for selecting the sentence imposed[.]" R.C.2929.19(B)(2)(e).
Beddow contends that the trial court did not explain its reasons for imposing the maximum sentence. Although no reason was set forth in the sentencing entry, the trial court did explain its reasons for the sentence orally from the bench at the sentencing hearing. The trial court's remarks are worth setting forth in full, as follows:
 And I'm going to go over real quickly your record. You have total of seven theft offenses. I'm sorry, nine misdemeanor theft offenses. This is your sixth felony theft offense. Not offense, but conviction. That — those are all convictions, the misdemeanors and this.
* * *
 So, you've got one, two, three, four, five, six, seven, eight, nine misdemeanor convictions for theft. One, two, three, four, five, six convictions for felony theft. You have asked this Court in your letters and you've sought help with your drug problem. And I'm here to tell you, you don't have a single drug case on you.
 MR. BEDDOW: Sir, every single case that I have ever committed was under the influence of crack cocaine. I'm not a career criminal; I'm a drug addict.
 JUDGE WAGNER: You look like a career criminal to me. You're . . .
MR. BEDDOW: Thank you very much.
JUDGE WAGNER: You're a thief. You're not a . . .
MR. BEDDOW: Thank you very much.
JUDGE WAGNER: . . . drug addict; you're a thief.
MR. BEDDOW: Thank you very much.
 JUDGE WAGNER: We've got lots of drug folks comin' in here . . .
 MR. BEDDOW: You don't understand. Thank you for your Judgment.
JUDGE WAGNER: It is my judgment.
 MR. BEDDOW: If you knew what's in my heart, you would — you would not say that.
 MR. DALY [representing Beddow]: Would you do me a favor and stay on course?
 JUDGE WAGNER: I understand, sir, but I have a duty to protect the people of this county. It seems like every three months you get out and three months later, you're stealing.
MR. BEDDOW: I ran out of crack.
 MR. DALY: Would — could I have one moment, Your Honor?
* * *
 JUDGE WAGNER: The — the Court finds that based on the — the — those facts, those convictions, that, in fact, you are an offender who poses the greatest likelihood of committing future crimes. You have shown how difficult it is for you to stay out of trouble.
 You — since 1994, you had a conviction in August of '94, in October of '94, in April of '95, in May of '95, in September of '95 you had two, three, four different theft offenses. In December of '95 you had your first felony conviction. In Nov — then you were sentenced to one year and put on probation. You did not succeed on that probation because in September of '96 you then committed another offense, another conviction.
 Oh, and in — in July of '96 and then in September of '96. You spent some years locked away on that one and came back in — a few months after that in — in October of '98 you were convicted of another theft offense and did thirty days. After the thirty days you came out and in — this was your longest period when you probably didn't commit any crime, but in November of '99 you did it again and got six months.
 And when you came out of that in March, and then in July of 2000 you were picked up again for an offense. And after doing nine months on that one, you're back here again on your seventh.
 That's — that is enough for me to say that the only way I can protect the public fully and completely is to make sure that you don't have the opportunity to steal. And the only way I can do that, sir, is to sentence you to a period of five years at Columbus Reception Center.
In our view, the above-quoted pronouncement by the trial court from the bench constitutes a compelling rationale for its finding that Beddow was among the class of offenders who posed the greatest likelihood of committing future crimes, as well as a compelling rationale for its decision to impose the maximum sentence.
Beddow's First Assignment of Error is overruled.
 V
All of Beddow's assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and POWELL, JJ., concur.
(Honorable Stephen W. Powell of the Court of Appeals, Twelfth Appellate District Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)